(C. D. 721)

Vozıou Brothers, Inc. *v.* United States

United States Customs Court, First Division

(Decided January 13, 1943)

*Strauss & Hedges* (*Joseph Schwartz* and *Hadley S. King* of counsel) for the plaintiff.

*Paul P. Rao*, Assistant Attorney General (*John J. McDermott*, special attorney), for the defendant.

Before Oliver, Walker, and Cole, Judges

Walker, Judge: This is a suit against the United States for the recovery of money claimed to have been improperly exacted as customs duties on an importation of raw calfskins from Poland. Duty was assessed thereon at the rate of 10 per centum ad valorem under the provision in paragraph 1530 (a) of the Tariff Act of 1930 for—

Hides and skins of cattle of the bovine species (except hides and skins of the India water buffalo imported to be used in the manufacture of rawhide articles), raw or uncured, or dried, salted, or pickled, 10 per centum ad valorem.

The protest claim relied upon is that for free entry under the provisions of paragraph 1681 of the free list of said act, which reads as follows:

Furs. and fur skins, not specially provided for, undressed.

An alternative claim was made in the protest for free entry under the provision in paragraph 1765 of the same act for—

Skins of all kinds, raw, and hides not specially provided for,

but that claim was not pressed, and appears to be wholly untenable when considered in competition with the provision under which the skins in issue were assessed.

The record shows that the skins at bar were purchased in Poland and specially selected for fur use principally because the hair was short and had distinct markings or what was called by many of the witnesses a "moire" effect, or flowery marking. Another consideration entering into the selection was the weight of the skin, the light ones being preferred. After importation the skins were dressed and dyed, and ultimately manufactured into ladies' imitation pony skin coats.

The record likewise shows that from 95 to 99 per centum of all calfskins produced in both the United States and foreign countries are used for leather purposes; that when there is a demand for calfskins for fur purposes buyers go through the offerings of calfskins and select those having the requisite "moire" effect, shortness of hair, and lightness in weight, and pay a higher price for such skins than is asked for the remainder. It would appear from the record, however, that when there is no demand therefor, and except for the buyers' own efforts in selecting and segregating, skins such as those at bar, although desirable for fur purposes, are sold as calfskins are usually sold, for leather purposes, and command only the ordinary price. Such light skins, according to one of defendant's witnesses, would be used for leather for women's shoes,"suede and upper leather; calf for women's shoes."

It may well be, and there is testimony in the record from which the inference could be drawn, that the price differential between skins such as those at bar, when sold as ordinary calfskins and when specially selected for fur purposes, is caused by the trouble occasioned the sellers of opening and retying bales and the small quantities purchased by fur buyers as compared with the volume sold when intended for leather purposes.

Citing the decision of this court in *Domestic Broadtail Producers, Inc.* v. *United States*, 2 Cust. Ct. 32, C. D. 81, plaintiff argues in the brief filed in support of the protest claim that because the chief use of specially selected calfskins such as those at bar is for fur purposes, and

because of the price differential, which, it is claimed, made it impractical from a commercial standpoint to sell or use them for leather purposes, they are not properly classifiable as "skins of cattle of the bovine species * * * raw or uncured," but as "fur skins, not specially provided for, undressed."

The competition of tariff provisions in the *Domestic* case, *supra*, was between a provision for "wools * * *. on the skin" and the provision for "Furs and fur skins, not specially provided for, undressed." In reaching its conclusion, the court there said:

That the skins in question could not, commercially and practically, be used for wool purposes is equally plain from the record.. In other words, it was proven and we find as a fact herein that if the wool had been pulled from the skins in this country, and if the wool and the pelts were sold here, the proceeds of such sales, less the cost of the pulling, would be much less than the bare landed cost of the skins without including duty and without adding anything for the importer's overhead expense in such an undertaking.

We think the *Domestic* case may be distinguished from the case at bar on at least two grounds: First, as to the law, in that in the *Domestic* case the classification protested against was made under a provision which made the ultimate use of the imported skins the test of classification thereunder, that is to say, to be dutiable under such provision the skins must be suitable for use as "wools." That this was the basic deciding factor in the *Domestic* case is brought out in a quotation from *United States* v. *Bennet*, 66 Fed. 299, on page 36 of the *Domestic* case as follows:

Raw Angora goat skins, with the wool on, are used exclusively as fur skins, and for no other purpose than as fur. It is not profitable to separate the hair from the skins, and to use the hair as wool. They are for all commercial uses undressed fur skins, and while they are also, literally, undressed wool skins, or skins with the wool on, their classification for tariff purposes should not be under the head of "wools," because practically they are not such. While bearing the name of "wool," they are not the wools to which the wool schedule relates, and it is too close an adherence to literalism to classify them as something which they are not.

In the case at bar the classification was not made under a provision which makes ultimate use the decisive factor, but under a general provision for a certain named kind of merchandise, i. e., skins of cattle of the bovine species, and that the merchandise before us clearly responds to that enumeration is not open to question.

Second, as to the facts, the record shows that skins in all respects identical to those in issue are commonly and ordinarily bought, sold, and used for leather purposes. They are therefore not *per se* fur skins, even though occasionally or when there is a demand therefor they might be used as such. In the *Domestic* case it appeared that skins such as were there in issue were selected and put aside both by the seller, the slaughter house, and by the buyer. This indicates that all parties recognized the skins as fur skins. In the case at.

bar it clearly appears that no particular effort is made by sellers to segregate these lightweight, short-haired, moired skins, and that ordinarily they are sold with other offerings of calfskins for leather purposes.

After citing various decisions of this and our appellate court, including *Ayres, Bridges & Co.* et al. v. *United States*, 8 Ct. Cust. Appls. 87, T. D. 37201, holding that the skins of certain animals which have hair or wool as distinguished from fur are nevertheless classifiable for duty purposes under the provisions for furs or fur skins, the following is said in plaintiff's brief:

> From the foregoing decisions it appears that this court, the Court of Customs and Patent Appeals, and the Federal Court, have reasoned that the term "fur or fur skin" is not limited to the pelt of what is commonly and strictly recognized as a fur-bearing animal, but by trade use is extended to those pelts which are used as furs in the manufacture of trimmings or garments. The provision then really becomes a provision as to use, and as such takes precedence over other provisions.

While it is not clear from a perusal of the opinions in the cases cited whether the decisions were rendered on the basis of common or commercial designation or on the basis of the provision for furs or fur skins being a designation by use, nevertheless, although it may well be that plaintiff has established that the chief, or even exclusive, use of such calfskins as are *specially selected by the buyers* was, at and prior to the passage of the Tariff Act of 1930, for fur purposes, we are of the opinion that the record fails to establish that the chief use of *all* lightweight, short-haired, moired skins was for such purpose at that time.

In our view the mere fact that a certain comparatively few calfskins were specially selected for fur purposes, while identical skins were bought, sold, and used for the general purposes of calfskins, would not change the status of the selected few under the provisions of paragraph 1530, for they are admittedly, in the final analysis, "skins of cattle of the bovine species." On the record presented we find the classification of the collector to have been correct, and judgment will therefore issue overruling the protest in all respects.